■ Arden Kean et al., Appellants, v Community General Hospital of Sullivan County et al., Defendants, and John R. Muccia et al., Respondents. [601 NYS2d 27] —Crew III, J. Appeal from an order of the Supreme Court (Williams, J.), entered October 13, 1992 in Sullivan County, which granted a

motion by defendants John R. Muccia and Lewis Broslovsky for summary judgment dismissing the complaint.

On or about April 26, 1984, defendant Lewis Broslovsky, a physician specializing in obstetrics and gynecology, confirmed that plaintiff Arden Kean was pregnant with her second child. The record indicates that Kean's pregnancy proceeded uneventfully until the third trimester, when she developed hypertension, for which Broslovsky prescribed bedrest, antihypertensive medication and a low-salt diet. Kean's postoperative course following the delivery of a healthy male infant by Cesarean section on December 14, 1984 was unremarkable. At the first of two postpartum visits with Broslovsky on January 8, 1985, Kean was asymptomatic and offered no complaints; at the second visit on February 5, 1985, Kean complained of a sore throat. Broslovsky took a throat culture, the results of which were negative. The record reveals that Kean did not treat with Broslovsky after this date.

Thereafter, on or about February 10, 1985, Kean visited the emergency room at defendant Community General Hospital of Sullivan County (hereinafter the hospital) complaining of chest pains and was examined by defendant Lourival Passini, an emergency room physician. Passini diagnosed Kean as suffering from an upper respiratory infection and referred her to defendant John R. Muccia, an internist specializing in cardiovascular diseases, for a follow-up visit. Kean was initially examined by Muccia on February 12, 1985, who concurred in Passini's diagnosis and prescribed antibiotics. The following day, Kean's mother telephoned Muccia and informed him that Kean was experiencing chest pains and shortness of breath and was coughing up blood. Muccia recommended that Kean return to the hospital emergency room, where she was again examined by Passini, who ordered additional tests, including an electrocardiogram and chest X ray. After reviewing the test results, Passini concluded that Kean was suffering from bronchitis and a urinary tract infection and adjusted her medication accordingly.

Two days later, on February 15, 1985, Kean's mother again telephoned Muccia and informed him that Kean had not improved. After reviewing the test results obtained by Passini, Muccia recommended that Kean return to the hospital. The following day, Muccia admitted Kean to the coronary care unit at the hospital and ordered additional tests, including a chest X ray, a lung scan, electrocardiograms and cardiac enzyme studies. On February 17, 1985, after reviewing these test results, Muccia diagnosed Kean as possibly suffering from

postpartum cardiomyopathy, an extremely rare disease of the heart muscle brought on by pregnancy. Muccia thereafter had Kean transferred to a facility better equipped to treat her where, it appears, Muccia's diagnosis of postpartum cardio-myopathy was subsequently confirmed.

Kean and her spouse (hereinafter collectively referred to as plaintiffs where appropriate) thereafter commenced this medi-cal malpractice action against, among others, Broslovsky and Muccia (hereinafter collectively referred to as defendants) alleging, *inter alia,* that defendants failed to timely diagnose and treat Kean's postpartum cardiomyopathy. Following join-der of issue, defendants moved for summary judgment dismiss-ing the complaint.* Supreme Court subsequently granted defendants' motion and this appeal by plaintiffs followed.

We affirm. In support of their motion for summary judg-ment defendants submitted, *inter alia,* the unanimous deter-mination of the medical malpractice panel recommending that they be held not liable for malpractice *(see, Bush v St. Clare's Hosp.,* 192 AD2d 772, 772-773), excerpts from their and Kean's examination before trial testimony and affidavits from their respective experts, a board-certified obstetrician/gynecologist and a board-certified internist with a subspecialty in cardio-vascular diseases. We are of the view that through this and other proof in the record, defendants made a prima facie showing of entitlement to judgment as a matter of law, thereby shifting the burden to plaintiffs to come forward with evidentiary proof sufficient to raise a question of fact *(see generally, Fridovich v David,* 188 AD2d 984, 985; *Dennis v St. Peter's Hosp.,* 163 AD2d 703, 704). The affidavit submitted by plaintiffs' attorney in opposition to defendants' motion for summary judgment was without evidentiary value *(see gener-ally, Alvarez v Prospect Hosp.,* 68 NY2d 320, 327; *Zuckerman v City of New York,* 49 NY2d 557, 563) and the brief, conclusory affidavit submitted by plaintiffs' expert, a doctor of osteopathy, which merely stated that defendants "missed the diagnosis [of postpartum cardiomyopathy] completely" and that "[i]t was a departure from good medical care by [defendants] not to have investigated [Kean's] shortness of breath and chest 'pressure' from a cardiac point of view", fell far short of the proof necessary to defeat defendants' motion *(see, Burt v Lenox Hill Hosp.,* 141 AD2d 378, 380; *cf., Lindeman v Slavin,* 184 AD2d 910, 911). Accordingly, defendants' motion for summary judg-

---

* In the interim, with the exception of Broslovsky and Muccia, the remaining named defendants apparently settled with plaintiffs.

ment was properly granted. Plaintiffs' remaining contentions have been examined and found to be lacking in merit.

Mikoll, J. P., Mercure and Mahoney, JJ., concur. Ordered that the order is affirmed, with costs.

